Argued July 3, decided July 15, 1913.

## KINGSLEY *v.* UNITED RYS. CO.*

(133 Pac. 785.)

**Ejectment—Title to Sustain Action.**

1. Under Section 325, L. O. L., permitting one having a legal estate in land and a present right to possession to recover it in an action against a person in actual possession, one who held a bond for the execution of a deed from the legal owner, and was put into possession by such owner, could maintain ejectment against a mere intruder.

> [For what property or invasion of possession ejectment will lie, see note in 116 Am. St. Rep. 568.]

**Property—Possessory Rights.**

2. Naked possession vests a sufficient property right in the possessor to permit him to hold the land against everyone except the true owner, actual occupancy or possession being in the nature of a right or estate.

**Ejectment—Title to Sustain Action—Possession.**

3. Bare possession will enable one ousted therefrom to eject a trespasser, or one not having a better title.

**Ejectment—Instructions.**

4. An instruction in ejectment that the damages to which plaintiff was entitled was damage to the possession, and not to the fee, the amount of which damage should be determined from all of the evidence, was proper.

**Damages—Punitive Damages.**

5. To authorize an award of punitive damages in a tort action, the injury must have been malicious or willful or wanton in character, or done so recklessly as to imply a disregard of social obligations.

---

*For the general rule that plaintiff must recover, if at all, on the strength of his own title, see note in 18 L. R. A. 781.        REPORTER.

**Eminent Domain—Remedy of Owner—Punitive Damages.**

6.  One who goes without the owner's consent upon another's land and appropriates a part thereof, and changes its physical features as by making a railroad cut contrary to the owner's wish, may be held liable in punitive damages.

**Eminent Domain—Action by Owner—Sufficiency of Evidence—Punitive Damages.**

7.  Evidence in ejectment to recover land appropriated by defendant as a railroad right of way and damages for wrongful taking and withholding, *held* to make the question of exemplary damages in entering one for the jury.

From Multnomah: HENRY E. McGINN, Judge.

Statement by MR. JUSTICE McNARY.

This is an action of ejectment instituted by plaintiff, E. D. Kingsley, to recover from the defendant United Railways Company, a corporation, possession of a quantity of land, being approximately 28 acres in Multnomah County, Oregon, and damages for the wrongful taking and withholding of the premises and for the rent, use and occupation thereof.   After alleging the corporate existence of defendant, and that it is engaged in operating an electric railway, plaintiff avers that during the month of April, 1906, A. L. Mills executed and delivered to plaintiff a bond for a deed to the above-described premises, and that simultaneously therewith placed plaintiff in possession of the property, and that he is entitled to the exclusive occupation of the same.   Continuing, plaintiff alleges that defendant in the month of April, 1908, without right or title thereto, entered upon the premises and ousted plaintiff therefrom, and does now wrongfully, willfully and maliciously withhold the possession of said premises from plaintiff; that upon the entrance of said premises defendant made deep cuts therein, likewise high fills, and drove and erected large numbers of piles and builded expensive railroad bridges, tore down the fences and constructed a right of way for an

electric railway across said land, and is now using the same for the purpose of operating its electric railway system and has used a large portion of the land for the purpose of storing a vast quantity of railway equipment to plaintiff's damage in the sum of $10,000; that the loss incident to the rental value of said premises and the use and occupation thereof during the plaintiff's deprivation has damaged him in the sum of $2,000; and, finally, that defendant occupied for its right of way a strip of land containing 2.07 acres. Judgment is demanded by plaintiff for the restoration of the whole of said land and for the damages heretofore mentioned.

In due time defendant filed its answer, wherein it denied generally the matters set forth in plaintiff's complaint, and alleged that in the month of May, 1908, it took possession of the strip of land containing 2.07 acres and constructed an electric railway line thereover in pursuance of a written agreement entered into by plaintiff and defendant, by the terms of which instrument plaintiff donated to defendant a perpetual right of way across said strip of land; that the conditions prescribed in said agreement were faithfully observed, and that the possession of said premises and the construction of said railway line thereover was with the knowledge and consent of plaintiff; that since the summer of 1908 defendant has operated passenger and freight trains across said land, and has since continued to operate its line of railway as a common carrier, in the transaction of state and interstate business; that, if ejected from said premises, it will be compelled to abandon its railway line and the business thereon, with a great detriment to the public interest, and it is therefore an absolute necessity that said line of railway remain continuously in operation and be maintained across the premises of plaintiff, and that the one

chosen is the only route across said premises over which defendant can operate its line of railway.   The issues were concluded by a reply containing a general denial of the affirmative defense asserted by defendant.

Upon the trial of the case the jury rendered a verdict to the effect that plaintiff was entitled to the possession of the whole of the property described in plaintiff's first pleading, and awarded damages to plaintiff in the sum of $3,000.   Following the entry of the judgment, defendant effected this appeal, assigning numerous errors, the significant ones of which will be considered in the opinion.            AFFIRMED.

For appellant there was a brief, with oral arguments by *Messrs. Carey & Kerr* and *Mr. Harrison Allen.*

For respondent there was a brief, with oral arguments by *Messrs. Wilbur & Spencer.*

MR. JUSTICE MCNARY delivered the opinion of the court.

The first and most important question to be determined arises from the contention that plaintiff has not the legal estate and right to possession of the premises as required by law to authorize ejectment.   Except as modified by our statute, the common-law principles pertaining to ejectment are applicable. Upon referring to the statute, we note Section 325, L. O. L., which reads: "Any person who has a legal estate in real property, and a present right to the possession thereof, may recover such possession, with damages for withholding the same, by an action at law. Such action shall be commenced against the person in the actual possession of the property at the time, or if the property be not in the actual possession of any one, then against the person acting as the owner thereof." Obviously this section of the code is sub-

stantially an affirmation of the principles of ejectment as known to the common law. Confessedly, at the time defendant entered upon the land, plaintiff was in possession thereof by direction of the legal owner from whom plaintiff had a contract of purchase, which, omitting the description of the premises therein contained, recites:

"Know all men by these presents, that I, Edward D. Kingsley, am held and firmly bound unto A. L. Mills in the sum of thirty thousand dollars to be paid to the said A. L. Mills, his executors, administrators or assigns, for which payment well and truly to be made I bind my heirs, executors and administrators firmly by these presents. Sealed with my seal and dated the 16th day of April, A. D. 1906. * * The conditions of this obligation are such that if the above-bounden obligator shall, on or before the 16th day of April, A. D. 1911, make, execute and deliver unto the said Edward D. Kingsley, his heirs or assigns, provided that the said Edward D. Kingsley, his heirs or assigns, shall on or before that day have paid unto the said obligator the sum of thirty thousand dollars, gold coin of the United States of America, a good and sufficient deed of all the certain lot, piece or parcel of land situated in the county of Multnomah, and state of Oregon, bounded and to be paid by said Edward D. Kingsley. And shall thereby convey the title of said premises, free and clear of all incumbrances, to the said Edward D. Kingsley, his heirs or assigns, then this obligation shall be void, otherwise to remain in full force and virtue." (Duly witnessed and acknowledged.)

1. It will be observed by the terms of the contract of sale that plaintiff had an equitable estate in the premises, and, when placed in the possession thereof by the legal owner, was endowed with the legal right to repel an invading attack of a mere intruder, and, possessing

such right, he had a sufficient interest or estate in the land to support an action of ejectment.

2. It is an undisputed rule of law that naked possession vests a sufficient right of property in the person who has such possession as to permit him to hold the land against all the world except the true owner. Consequently actual occupation or possession of real property is in its essential nature of an estate or right therein: *Wilson* v. *Fine* (D. C.), 38 Fed. 789. Even were plaintiff a trespasser relatively to the owner of the legal estate in the premises, he would, while in possession, be owner of the land relatively to the defendant railway corporation.

3. In this state the rule has become fixed that possession is a sufficient interest in land to enable one ousted therefrom to eject a trespasser or one unable to show a better title: *Gallagher* v. *Kelliher,* 58 Or. 557 (114 Pac. 943, 115 Pac. 596); *Browning* v. *Lewis,* 39 Or. 11 (64 Pac. 304); *Sommer* v. *Compton,* 52 Or. 173 (96 Pac. 124); *O. R. & N. Co.* v. *Hertzberg,* 26 Or. 216 (37 Pac. 1019). In arriving at the conclusion that Section 325, L. O. L., authorizes a vendee under an executory contract of sale of real property to maintain ejectment when disseized by a trespasser, we are not forgetful of the numerous cases decided by this court of which *Sayre* v. *Mohney,* 30 Or. 241 (47 Pac. 197), is an illustration; that at law a bond for a deed conveys no estate whatever, but in equity an equitable estate is created. These cases do not touch the vital point under consideration, but merely consider the correlative rights of the parties to a contract of sale without reference to the legal *status* of a person dispossessed by an intruder. The defendant asserts that its entry upon the land was made with the consent of plaintiff, and for that account plaintiff is estopped from maintaining ejectment. We are aware that the courts have

frequently held that if a land owner knowing that a railroad has entered upon his land and is engaged in constructing its road without having brought proceedings to condemn or without permission, and remains inactive, and permits the company to expend large sums in the construction work, the land owner will be estopped from maintaining ejectment, and will be regarded as having acquiesced in the conduct of the railway company: *Roberts* v. *Northern Pac. R. R.,* 158 U. S. 1 (39 L. Ed. 873, 15 Sup. Ct. Rep. 756).

The record before us does not lead to the conclusion that plaintiff can be charged with such acts of omission or commission that would preclude him under the rule enunciated. Upon this phase of the case, counsel for defendant rely mainly upon two letters by plaintiff calculated, it is claimed, to inspire in defendant the belief that plaintiff was satisfied with the entry of defendant and the building of its railway. However, that may be, the testimony received in the trial of the case upon that point was widely conflicting. An inspection of the record discloses there was some evidence introduced at the hearing tending to show that some of the conditions precedent dictated by plaintiff were never observed by defendant and that the entry was without the sanction of law and in subversion of the rights of plaintiff. This being so, the right or the wrong of defendant's conduct was for the jury to determine, and not for an appellate court.

4. It is urged that the trial court erred in giving the jury the following instructions: "You will remember, gentlemen, that the damages to which plaintiff is entitled is damage to the possession, and not to the fee— it is simply to his possession and what that amounts to you are to determine from all of the testimony in the case." These instructions clearly presented to the minds of the jurors the measure of plaintiff's interest in the premises, and were entirely proper.

Error is predicated upon the court's statement to the jury that damages could be awarded for the withholding of the possession of the whole of the premises described in the complaint, including the right of way, and in the submission of a general verdict embracing the whole tract. The complaint contains the declaration that defendant took possession of the whole tract, and in support thereof some testimony was placed before the jury that defendant in the construction of its line of railway upon the 2.07-acre tract occupied a considerable part of the whole premises. It was the prerogative of the jury to consider the territorial extent of the disseizin as limited by the averments in the pleadings.

Finally, the contention is made that the lower court erred in presenting to the jury the following instructions:

"In addition to this, gentlemen, if you should determine that the railroad company has acted high handedly and maliciously, I say if you should determine that, with a total disregard of the rights of the plaintiff in this case, they have taken possession of his property in utter disregard of his social rights as a citizen, and as a man, then in addition to the actual damages he has sustained, you would have a right to assess what are known as punitive or exemplary damages to deter this company, and all other people, from doing acts of this kind in the future. But you must remember, gentlemen, that in no sense can you take up the question of punitive or exemplary damages, unless you should determine that the act of this company was malicious, and was done in total disregard of the social rights of the plaintiff, as a citizen and as a man."

5. It is the law that in actions *ex delicto* the jury may, if they are satisfied from the testimony, award what are known in the law as exemplary or punitive

damages. To justify such damages, the jury must be satisfied from the testimony that the injury done was malicious or willful and wanton in its character or committed with a bad motive or so recklessly as to imply a disregard of social obligations.

6. To go unbidden upon another's lands, appropriate a part and change the physical aspects thereof in contravention of the expressed wishes of the owner, constitute acts so violent to wholesome legal restrictions as to come within the rule permitting exemplary damages. Plaintiff gave testimony that he prescribed certain conditions upon which defendant might acquire a part of the land for its purposes, but that, instead of meeting the requirements and while plaintiff was confined by bodily infirmity in a hospital, defendant entered upon the land, and in violation of expressed mandates of plaintiff and without paying for or tendering payment of said right of way constructed a railway line across a part of the premises, to its great physical damage. In fairness to the defendant we are glad to concede that it offered testimony quite to the contrary, but it is not our office to weigh the testimony beween parties, but rather to ascertain if there was any testimony tending to sustain the conclusion of the jury.

7. Under all the circumstances, we think the court did not err in giving the instruction.

We deem the remaining assignments of error immaterial.

Judgment is affirmed.                    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.