Argued March 11, affirmed April 19, 1977

BUSCHMAN et ux, *Appellants,*
*v.*
PAULL et al, *Respondents—Cross Appellants.*
(No. 73-136 L, SC 24410)

563 P2d 1197

Sam A. McKeen, Klamath Falls, argued the cause and filed briefs for appellants.

Quentin D. Steele, Klamath Falls, argued the cause and filed a brief for respondents—cross appellants.

Before Denecke, Chief Justice, and Tongue, Bryson, and Davis, Justices.

DAVIS, J., Pro Tempore.

**DAVIS, J.,** Pro Tempore.

Plaintiffs bring this action in two counts: ejectment and conversion. Defendants Paull filed a countersuit to quiet title to the real property in question and recoupment. The case was tried before the court. Thereafter written general findings of fact were entered granting judgment in favor of the Paulls on count one, allowing the Paulls' countersuit to quiet title, finding in favor of the plaintiffs against William Paull and Phil Barry on the second count, awarding $3,200 general damages and $5,000 punitive damages. The record is silent as to what disposition was made to the Paulls' claim for recoupment. Upon motion, defendant Lucille Paull was granted an involuntary nonsuit in the action for conversion.

Defendant Barry was adopted by the Paulls one month before the trial of this case. He testified that before the adoption he was acting as the "agent" for defendant William Paull. For the sake of brevity, these defendants will hereafter be referred to as Paull and Barry. Plaintiffs appeal the court's ruling on the first count of the complaint and the countersuit to quiet title. Paull and Barry appeal the court's rulings on the second count.

On the 15th day of June, 1970, plaintiffs and the Paulls entered into a land sale contract wherein plaintiffs agreed to purchase real property located in Klamath Falls, Oregon, from the Paulls. This land had two homes on it, one occupied by the plaintiffs, and the other, a smaller house, rented out by them.

In December 1972, plaintiffs were involved in a quarrel resulting in plaintiff Sylvia Buschman's moving with her 18-month-old baby to her mother's residence. On the 20th day of December, Sylvia, accompanied by her brother, went to the house to remove her personal possessions and a violent argument occurred. A gun was fired into the house and thereafter Sylvia sustained a black eye when struck by her husband.

She departed eventually with her personal possessions and also removed the stove, refrigerator and dining room set from the house. Shortly thereafter she and the baby moved into an apartment.

Several days after this argument, plaintiff Robert Buschman left for California, and upon his return in four or five days was immediately arrested and charged with a narcotics violation. He was in jail for four days and upon his release went to his home. He observed "No Trespass" signs posted. He went into the house for a few minutes and thereafter departed, never to return. Thereafter he was convicted of a drug violation and received a six-month sentence. He served approximately 60 days before his release.

Paull testified that he was aware of the plaintiffs' problems and that he first entered the house on December 31, 1972, believing that it had been abandoned by the plaintiffs. He notified plaintiffs by letter that the contract of sale was null and void, and he declared a forfeiture. Thereafter, Barry removed the plaintiffs' furniture and other personal properties from the house. According to Paull, the cost to make the home livable after the departure of the plaintiffs was in excess of $7,000. Plaintiffs testified that they had no intention of abandoning the property, that they were not delinquent in their monthly payments, other than for $100, and that the Paulls had waived their right to declare a default by accepting late payments on other occasions.

■ There was such a divergence of testimony by the parties and their respective witnesses with regard to every issue involved in this case, including the conversion of the personal property and its value, that a review of this evidence would be of no benefit to anyone. Suffice it to say, the trial court had the responsibility of weighing these facts and the credibility of the witnesses. We find there was sufficient evidence to support the findings of the court in this respect.

[ 144 ]

Prior to the trial, defendants filed a demurrer to the complaint on the ground that count one and count two did not state a cause of action. The demurrer was not argued nor were briefs submitted. The trial court denied the demurrer at the time of trial although he indicated that "It was not clear on what theory plaintiffs were proceeding." Not until plaintiffs filed a memorandum of law at the close of the case was it made clear to the court that plaintiffs were proceeding under ORS 105.005. The trial judge stated in his opinion that if he had been aware of plaintiffs' theory before trial he would have sustained the demurrer on the ejectment count. Judgment was granted in favor of the Paulls on the demurrer.[1]

■ The court ruled that since the plaintiffs had only an equitable interest in the real property and not a "legal estate," they could not bring an action for ejectment against the owners in fee, that is, the Paulls.[2]

ORS 105.005 provides:

"Any person who has a legal estate in real property and a present right to the possession thereof, may recover possession of the property, with damages for withholding possession, by an action at law. The action shall be commenced against the person in the actual possession of the property at the time, or if the property is not in the actual possession of anyone, then against the person acting as the owner thereof."

ORS 105.010(1) provides:

"The plaintiff in his complaint shall set forth:

"(1) The nature of his estate in the property, whether

---

[1] ORS 16.330 provides:

"If no objection is taken, either by demurrer or answer, the defendant shall be deemed to have waived any objection, save for the objection to the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of action. If, however, an objection is interposed and overruled, the objection thereby taken shall not be waived by answering over, and the court's ruling thereon shall be subject to review on appeal from final judgment in the cause."

[2] *Eggen v. Wetterborg,* 193 Or 145, 237 P2d 970 (1951); 28 CJS Ejectment 855, 1042; 92 CJS Vendor and Purchaser 545.

it be in fee, for life, or for a term of years; including, when necessary, for whose life and the duration of the term."

Plaintiffs argue that an equitable owner of property is entitled under ORS 105.005 to file an ejectment action, and cite *Feehely v. Rogers,* 159 Or 361, 76 P2d 287, 80 P2d 717 (1938); *Kingsley v. United Rys. Co.,* 66 Or 50, 133 P 785 (1913). These cases were not actions against the owners in fee as in this case, but actions against trespassers.

It is the plaintiffs' contention that the conduct of Paul and Barry, and the manner in which plaintiffs were "ousted" from their property, relegated these defendants to the position of trespassers. Plaintiffs cite no cases to support this position.

We agree with the trial court that other remedies in law and equity were available under circumstances as alleged by the plaintiffs.

■ Plaintiffs further contend that the trial court erred in allowing defendants Paull to plead, prove and obtain equitable relief in an action for ejectment. ORS 16.460(2) provides to the contrary:

"* * * Equitable relief respecting the subject matter of the suit may thus be obtained by answer, and equitable defenses to new matter contained in the answer may thus be asserted by reply. * * *"

The trial court did not err in quieting title to the real property owned by the Paulls.

■ It is the contention of Paull and Barry on their cross-appeal that the trial court erred in failing to grant their motion for an involuntary nonsuit to plaintiffs' second cause of action (conversion). They argue that plaintiffs failed to prove what personal property was converted by these defendants, nor did they prove the market value of said properties. The court also erred, according to Paull and Barry, in awarding punitive damages to the plaintiffs on the basis that the evidence did not support the court's

written findings. These exceptions by Paull and Barry involve questions of fact, and, as previously stated in this opinion, we found that the trial judge in his findings did not err in this regard.

■ This case went to trial on October 9, 1975. Paull, a 75-year-old man, was on the witness stand for two hours during the morning of October 10. He was being cross-examined at the time of the noon recess. Before trial resumed, Paull's attorney informed the court that his client was at the doctor's office suffering from an emotional strain as a result of the trial, and requested a continuance. The court by telephone discussed the matter with the doctor and was informed that Paull was not physically able to continue with the trial that day due to emotional stress and high blood pressure, although according to the doctor his blood pressure was not dangerously high.

The case was continued until October 31, 1975. In the interim Paull's attorney requested by written motion a further continuance because of his client's ill health. Lengthy arguments were made to the court on the 31st day of October, 1975, and duly reported. After Paull's attorney said that he was uncertain when if ever his client would be available, and upon the plaintiffs' willingness to waive further examination of Paull, the court denied the motion for continuance. The basis for this ruling was that Paull had the opportunity to fully explain his side of the case before his illness, and would in no way be placed in jeopardy by not being present for the remainder of the trial. Paull assigns as error this ruling on the ground that the court abused its discretion.

■ One of the many functions of a trial judge is to handle cases expeditiously and with fairness. The record reveals that the trial judge fulfilled this obligation and that Paull was not placed in jeopardy by not being present for the balance of the trial.

Affirmed.